## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

AMANDA JANE BERGQUIST

     *Plaintiff,*                          Case No. 18-cv-03619

v.                                    Hon. John Robert Blakey

DONALD MILAZZO; JENNIFER LARSON;
KENNETH DOROCIAK; KELLY JACKSON;
THOMAS J. DART; COOK COUNTY
SHERIFF'S OFFICE; COOK COUNTY, a
political subdivision of the State of Illinois.

     *Defendants,*

_____/

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, AMANDA BERQUIST, by and through her attorneys, complaining of Defendants, and respectfully alleges as follows:

### JURISDICTION AND VENUE

1.    This is a civil rights action in which the Plaintiff seeks relief for the violation of her rights secured by 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments.

2.    Jurisdiction of this Court is found upon 28 U.S.C. § 1331.

3.    The events that give rise to this lawsuit took place in and around the Bridgeview Courthouse, located at 10220 South 76th Street #205l, Bridgeview, Illinois, 60455.

4.    Venue is appropriate in the Northern District of Illinois pursuant to 28 U.S.C § 1391(b) since the individual Defendant Officers are employees of Cook

County and the acts providing the legal basis for this complaint occurred in the City of Bridgeview, County of Cook, State of Illinois.

## **PARTIES**

5.     Plaintiff, AMANDA BERGQUIST ("Plaintiff" or "Ms. Bergquist"), is a law-abiding citizen of the United States and a resident of the Village of Justice, County of Cook, State of Illinois.

6.     Defendant, County of Cook, ("Cook County") is a political subdivision of the State of Illinois, and enacted the complained of policies followed by the individual defendants as outlined herein. Alternatively, Defendant Cook County Sheriff's Office ("CKSO") is a separate entity from Cook County and has the authority to enact its own polices and did in fact enact the complained of policies followed by the individual defendants as outlined herein.

7.     At all pertinent times, Cook County and/or CKSO had an obligation to enact and enforce lawful and constitutional policies, procedures, protocols, and customs for all employees, agents, and contractors, to follow, particularly those who are considered to be law enforcement, such as the individually named defendants. Further, Cook County and/or CKSO had the affirmative duty to train and supervise all employees, agents, and contractors, including the individually named defendants, specifically to ensure that people such as Plaintiff don't have their rights violated by people such as the individually named defendants.

8.     Contrary to and in violation of this obligation, Cook County and/or CKSO (jointly "The County") violated this legal obligation by enacting unconstitutional policies, procedures, customs, and protocols, which not only

2

demonstrated deliberate indifference to Plaintiff's constitutional rights, but also directly caused the herein described violations of Plaintiff's constitutional rights.

9.     Defendant, Donald Milazzo ("Milazzo") is employed by the County of Cook and/or by the Cook County Sheriff's Office as a deputy lieutenant and was at all pertinent times assigned to the Bridgeview Cook County Courthouse Sherriff's Office, and was at all pertinent times acting under the color of state law.

10.    Defendant, Jennifer Larson ("Larson") is employed by the County of Cook and/or by the Cook County Sheriff's Office as a deputy sheriff sergeant and was at all pertinent times assigned to the Bridgeview Cook County Courthouse Sherriff's Office, and was at all pertinent times acting under the color of state law.

11.    Defendant, Kenneth Dorociak ("Dorociak") is employed by the County of Cook and/or by the Cook County Sheriff's Office as a deputy sheriff and was at all pertinent times assigned to the Bridgeview Cook County Courthouse Sherriff's Office, and was at all pertinent times acting under the color of state law.

12.    Defendant Kelly Jackson ("Jackson") was at all pertinent times a Deputy Chief for the Cook County Sheriff's Office and was Milazzo's supervisor, and was at all pertinent times acting under color of state law.

13.    Defendant Thomas J. Dart ("Dart") was at all pertinent times the Sheriff of Cook County, and as such had the legal obligation to carry out the duties required of The County as it relates to the Cook County Sheriff's Office and its employees, agents, and contractors. The allegations, assertions, duties, and violations described herein ascribed to 'The County' are equally ascribed to Dart, in his capacity as Sheriff of Cook County.

14. The individual Defendant Officers, Milazzo, Larson, and Dorociak, when referred to collectively, will be referred to as the individually named "Defendant Officers".

15. On or about March 28, 2018, at the time of the events alleged in this Complaint, all the individually named Defendants were at all times each acting in their individual and official capacities, within the course and scope of their employment as police officers and/or agents employed by the County of Cook and under the color of law.

16. All herein described acts of the individual Defendants were done wantonly, intentionally, knowingly, maliciously, recklessly, unreasonably, and/or with gross negligence and/or deliberate indifference.

## FACTUAL BACKGROUND

17. On March 28, 2018, at about 1:15 PM, Ms. Bergquist went to the Bridgeview Courthouse located at 10220 South 76th Street #205l, Bridgeview, Illinois, to address a ticket.

18. Ms. Bergquist could not make it through the courthouse security because she had a handheld Sony Camera in her purse.

19. Ms. Bergquist then exited the courthouse building.

20. Ms. Bergquist stood outside the courthouse building and began to film the building with her camera.

21. Ms. Bergquist filmed the front doors of the courthouse and the no smoking sign.

22.   Filming or taking pictures of public buildings from the outside is lawful and constitutionally protected conduct. Such an action gives the police no authority to detain the person recording for suspicious behavior.

23.   After about one minute of filming, Deputy Sheriff James Barbaro came to the door and asked what Ms. Bergquist was doing and why.

24.   Ms. Bergquist responded that she was recording the building because she wanted to. Barbaro asked "For what purpose?" and Ms. Bergquist did not respond. Barbaro then called for a supervisor.

25.   Defendant Milazzo responded to the supervisor request and then exited the courthouse to speak to Ms. Bergquist. Barbaro returned to his post manning the doorway and metal detectors and had no further involvement with Ms. Bergquist.

26.   Defendant Milazzo approached Ms. Bergquist and the following exchange took place:

Milazzo: "Ma'am do you know this is a public building?"

Bergquist: "Exactly. That's why I'm recording it."

M: "It's also a court facility…"

B: "Yep"

M: "Which there is a judicial law or order that says you cannot tape this building."

B: "Can I see that order?"

M: "Yes, come on, we're going to check your ID's too."

B: "Oh no. I'm not going in."

M: "Oh yeah, no no no. we're going to run you too."

B: "No, that's alright."

M: "We're going to get your name, we're going to do a report, and everything, so come on in." (**Spoiler**: This was a bully tactic by Milazzo.)

B: "Um, no."

M: "Yeah, you're going to come in now."

B: "I'm being detained?"

M: "yes."

27.  The conversation went on, but as of that second, Ms. Bergquist was being detained.

28.  There existed not a shred of evidence suggesting that Ms. Bergquist had done anything illegal, nor was there reasonable suspicion nor any lawful basis to detain her. Yet Milazzo detained her.

29.  Ms. Berguist asked why she was being detained and Defendant Milazzo responded that she was "doing something suspicious" and that is was a reason to detain Ms. Bergquist.

30.  Ms. Bergquist then asked Defendant Milazzo if she "was just being detained for taking pictures of the building."

31.  Defendant Milazzo responded affirmatively and stated yes, that she was "doing something suspicious" and that they need to know who she was and why she was recording the building.

32.  Ms. Bergquist then asked if Defendant Milazzo was familiar with the First Amendment.

33.     Defendant Milazzo responded again in the affirmative as he forcefully grabbed Ms. Bergquist's camera from her hands and ordered Defendants Dorociak and Larson, to place Ms. Bergquist in cuffs. They then led her into the courthouse.

34.     Milazzo was acting in his supervisory capacity when ordering Dorociak and Larson to unlawfully handcuff Ms. Bergquist and they complied. Milazzo thus at least implicitly authorized, acquiesced, or approved the unlawful conduct of his subordinates and actively participated in it by giving this order.

35.     Ms.  Bergqusit was detained and/or arrested by these defendants.

36.     The unlawful arrest and/or detainment of Ms. Bergquist was done in blatant violation of the Fourth and First Amendment.

37.     The unlawful seizure of Ms. Bergquist's camera was done in blatant violation of the Fourth and the First Amendment.

38.     No lawful basis existed for the Defendant Officers to detain and/or arrest Ms. Bergquist or confiscate her camera.

39.     Defendant Officers walked Ms. Bergquist into the building through the employee security metal detectors.

40.     While walking, Defendant Milazzo said "if you got a reason for being here filming then we need to know what it is."

41.     Ms. Bergquist responded that they do not need to know why she was recording the building because it was not their business.

42.     Defendant Milazzo then asked for Ms. Bergquist's identification.

43.     Ms. Bergquist responded that she did not consent to any searches or seizures of her or her camera.

44.    Defendant Milazzo then said that he would "detain her until we decide who you are."

45.    Ms. Bergquist then indicated she wished to call her lawyer and Milazzo replied "Ok, call your lawyer" but at no point gave her an opportunity to do so.

46.    Ms. Bergquist asked Defendant Milazzo if he was familiar with the Fourth Amendment, to which Milazzo replied "oh great, why do we always get the crazies" and then stopped Ms. Bergquist's camera from recording, as Larson answered, "I don't know."

47.    Over the next couple hours, Ms. Bergquist remained in the defendants' custody while they threatened her, bullied her, handcuffed her, and tried to break her resolve, but she held firm.

48.    Defendants Larson and Milazzo repeatedly threatened Ms. Bergquist that she should tell them who she is, or she would spend 90 days in jail. Ms. Bergquist asserted her right to remain silent and asked for a lawyer.

49.    Defendant Milazzo picked up Ms. Bergquist's camera and deleted the footage that Ms. Bergquist had captured. He then took the camera into his office.

50.    Ms. Bergquist sat handcuffed for a length of time on a bench all while Larson and Milazzo repeatedly threatened her with 90 days jail, and advised her that she could go free if she only would give them her ID. They essentially told her she would go free if only she would abandon her constitutional rights. But she held firm.

51.    Milazzo at one point asked Larson, while right in front of Ms. Bergquist, "What the fuck is going on today? Every crazy loon in the building is coming."

52.    Larson and Milazzo even tried 'good cop bad cop' at one point. Milazzo went into his office and Larson continued to warn Ms. Bergquist that she'd be arrested if she didn't just ID herself. But Ms. Bergquist continued to assert her rights and again requested to call her lawyer. Larson asked Ms. Bergquist if she wanted to call her lawyer and Ms. Bergquist answered, "yep." But just like Milazzo did not allow Ms. Bergquist to call her lawyer, neither did Larson.

53.    At least part of the reason that Ms. Bergquist was kept in handcuffs and brought to a judge even after Milazzo searched her purse and knew who she was, was to punish her for asserting her constitutional rights and not kowtowing to the defendants' bullying tactics and threats.

54.    After a while, Defendant Milazzo exited his office and emptied the contents of Ms. Bergquist's purse onto the counter right in front of her.

55.    Ms. Bergquist then told Defendant Larson that they now know who she is since they emptied her purse and found her ID.

56.    Defendants had Ms. Bergquist sit on a bench while handcuffed for a length of time.

57.    Throughout this ordeal, Milazzo and Larson pretended as though they only needed Ms. Bergquist's ID so they could complete a report after which Ms. Bergquist would be released. But that is not true because *they did not release her even after searching her purse and finding her ID*. The only explanation for why the defendants offered to release her if she voluntarily gave them her ID but refused to release her after searching her purse and finding her ID, is that she refused to kowtow to the defendants' bullying; in other words, the only reason for her continued

9

detention was her constitutionally protected conduct of asserting her constitutional rights.

58.　At one point while Ms. Bergquist was in custody, Milazzo spoke to Defendant Jackson, his supervisor, and advised her of what was happening. Specifically, Milazzo told Jackson that Bergquist had been videoing ***outside*** the building and as a result, they detained her and had her in custody. Defendant Jackson, as Milazzo's supervisor, had the obligation to immediately order Ms. Bergquist's release, since Milazzo had told Jackson all she needed to know to be able to conclude that Ms. Bergquist was being detained unlawfully and unconstitutionally. Jackson, as Milazzo's supervisor, disregarded her supervisory duty and encouraged Milazzo to unlawfully and unconstitutionally maintain Ms. Bergquist in custody. Defendant Jackson thus had actual knowledge that Ms. Bergquist's rights were being violated and that she was being harmed by Milazzo and others, and yet Jackson failed to act despite her knowledge of a substantial risk of serious harm being done to Ms. Bergquist, IE, her handcuffing, detainment/arrest, search of her property, seizure of her property, and the abuse of process taking place.

59.　Eventually, Defendants Milazzo and Larson brought Ms. Bergquist to see Judge Peter Felice.

60.　Before entering the courtroom, Defendant Larson took the handcuffs off Ms. Bergquist and Milazzo returned the camera to Ms. Bergquist.

61.　Defendants Larson, and Milazzo entered a crowded courtroom with Ms. Bergquist. As they walked in the courtroom, Judge Felice said that he understands there is a situation that came up.

62.    The trio walked to the podium and Defendant Milazzo approached Judge Felice and conversed quietly with him.

63.    Ultimately, Judge Felice ordered Ms. Bergquist to give him the SD card from her camera even though the footage had already been deleted by Milazzo.

64.    Ms. Bergquist handed the SD card to a court clerk.

65.    Judge Felice then ordered that Ms. Bergquist return to the courtroom on Friday, March 30, 2018.

66.    Judge Felice asked if she wanted her SD card back.

67.    Ms. Bergquist said yes and asked if she had to return to court if she decides she no longer wants her SD card back.

68.    Judge Felice answered yes, she must return to court.

69.    Ms. Bergquist was then accompanied out of the courtroom by Defendant Milazzo and Defendant Larson.

70.    While leading her out of the courtroom, Defendant Milazzo and Defendant Larson told Ms. Bergquist that she could have made it easy on herself.

71.    Ms. Bergquist returned on Friday, March 30, 2018 as ordered.

72.    Ms. Bergquist attempted to sign in with the court clerk but saw that she was not listed on the docket. The court clerk commented that Ms. Bergquist was the lady with the camera. Ms. Bergquist then waited in the courtroom for about twenty minutes before Judge Felice came out of chambers.

73.    Judge Felice called Ms. Bergquist to the stand, returned her SD card and said that they did not look at it, they did not delete anything and wished her a nice day.

74.    Ms. Bergquist left the courthouse and on the following day mailed the SD card to a data technician in Pennsylvania who recovered the deleted footage.

75.    The bottom line is this: Ms. Bergquist was detained for taking pictures outside of the courthouse and for refusing to identify herself.

## EVIDENCE OF *MONELL* LIABILITY

76.    Milazzo, a 27-year deputy, including 22 years as a Lieutenant with about 55 subordinates, knows The County's policies and is correct about what he believes the policies to be. Or alternatively he does not know the policies, yet has such a high rank and has so many subordinates; this would demonstrate that only through The County's deliberate indifference could someone wielding so much power on behalf of The County, be so wrong about the policies he's charged with enforcing. With that in mind:

77.    Milazzo claims there is a policy to detain people for taking pictures from outside of the courthouse if the photographer refuses to identify him/her self.

78.    Milazzo claims the law allows law enforcement to detain anyone whom law enforcement only *__subjectively__* believes to be involved in criminal activity.

79.    Milazzo claims there is a policy to detain with handcuffs anyone taking pictures "in or around" the courthouse – including *__outside__* – if that person refuses to identify him/her self. Milazzo claims this policy was in effect ever since the 9/11 terror attacks.

80.    Milazzo claims that he was notified by "Chief Deputy Robert Beavers" of this policy to detain people taking pictures outside of the courthouse.

81.   Milazzo does not know the Miranda rights, yet has the power to have people handfeed, detained, and arrested.

82.   Milazzo, even today, after having a chance to review the written policies and having had a chance to reflect on what happened, still believes the detainment of Ms. Bergquist was proper.

83.   Milazzo believes The County's policies allows law enforcement to _detain_ people for doing nothing more than taking pictures outside of the courthouse, if that law enforcement _subjectively_ believes the picture-taking is suspicious.

84.   Milazzo, to this day, is unable to articulate a lawful basis for having had Ms. Berguist handcuffed, yet he still believes the detainment was proper and the handcuffing was lawful, per The County's policies.

85.   Milazzo believes it is permissible to continue a custodial interrogation of a suspect, after the suspect has requested a lawyer.

86.   Milazzo admits that there was no reasonable suspicion that Ms. Bergquist was engaging in any criminal acts, but still believes the detainment was proper and the handcuffing was lawful.

87.   Milazzo claims that if someone is taking pictures of the courthouse outside of the courthouse, and refuses to identify herself when requested by law enforcement, that such refusal coupled with the picture-taking creates a lawful basis to detain that person.

88.   Milazzo claims he was trained that The County's policies prohibit recording in **_and around_** the building, and further that he is supposed to detain people for taking pictures outside of the courthouse.

89.    Larson, though not ranked as high as Milazzo, is a Sergeant, and has been one for almost ten years.

90.    Larson claims The County's policies allow her to detain someone in handcuffs simply to ask them questions, even if that person is not doing anything illegal.

91.    Larson claims that the defendants had the right to ask Ms. Bergquist for her identification (which Plaintiff does not dispute, with the caveat that they did not have the right to ***demand*** her ID) and that when Ms. Bergquist refused, they then had the right to detain her. Larson even claims she has been trained to do so ever since the 9/11 terror attacks.

92.    These beliefs of these two high-ranking Cook County defendants establish not only that they believe they are permitted to do many unconstitutional acts, but that they have actually been trained to do so.

**COUNT I**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(First Amendment – Unlawfully Preventing Recording of Public Building and Retaliation)**

***(Against Defendants Milazzo, Larson, Dorociak, Jackson, Dart, CKSO, and Cook County)***

93.    Plaintiff incorporates herein all the prior allegations.

94.    Plaintiff engaged in Constitutionally protected conduct of recording a public building with a handheld camera.

95.    Defendant Officers handcuffed and detained/arrested Plaintiff for exercising her First Amendment right to record a public building.

96. In retaliation for this protected conduct, Defendant Officers wantonly, intentionally, knowingly, maliciously, recklessly, unreasonably, and/or with gross negligence and/or deliberate indifference detained, handcuffed, and detained/arrested Plaintiff without a warrant or any lawful basis.

97. Plaintiff's retaliatory detainment/arrest was based on Defendant Officer's knowing, deliberate, and reckless disregard for the truth, wherein they made false statements regarding the law. Further, Defendant Officers had no knowledge of any fact or circumstance which would lead a reasonable person to believe that Plaintiff committed any offense, whatsoever.

98. Such retaliation would serve as a deterrent to a person of ordinary firmness from engaging in such protected conduct.

99. The retaliation was motivated at least in part by the protected speech.

100. There was a causal connection between Plaintiff's Constitutionally protected conduct and the adverse retaliatory actions taken by the defendants against Plaintiff.

101. Defendant Officers intentionally detained/arrested Plaintiff and/or had her detained/arrested with the intention of confining her within the fixed boundaries of the courthouse, and kept her confined in their custody for three (3) hours before releasing her without charging her with a crime and requiring her to return to court. Additionally, Defendants conduct in detaining/arresting and confining Plaintiff deprived her of her liberty without her consent, probable cause, legal justification, just cause, or any other legally valid reason.

102.  As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiff was harmed and suffers damages.

## COUNT II
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## (First Amendment – Retaliation)

### (Against Defendants Milazzo, Larson, Dorociak, Jackson, Dart, CKSO, and Cook County)

103.  Plaintiff incorporates herein all the prior allegations.

104.  Plaintiff engaged in Constitutionally protected conduct after being detained and/or arrested and brought into the sheriff's office when she demanded an attorney, asserted her right to remain silent, refused to consent to searches, seizures, and refused to comply with the defendants' unlawful demands for her to identify herself.

105.  The defendants even told her that they would release her if she identified herself, but, knowing her constitutional rights, she refused.

106.  As punishment for her asserting her rights and refusing to be bullied by these defendants, they refused to release her, kept her handcuffed, and brought her before a judge.

107.  In retaliation for this protected conduct, Defendant Officers wantonly, intentionally, knowingly, maliciously, recklessly, unreasonably, and/or with gross negligence and/or deliberate indifference refused to release her, kept her handcuffed, and brought her before a judge.

108.  Such retaliation would serve as a deterrent to a person of ordinary firmness from engaging in such protected conduct.

16

109. The retaliation was motivated at least in part by the protected speech.

110. There was a causal connection between Plaintiff's Constitutionally protected conduct and the adverse retaliatory actions taken by the defendants against Plaintiff.

111. As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiff was harmed and suffers damages.

## COUNT III
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Fourth Amendment - Unlawful Detainment/Arrest)

### (Against Defendants Milazzo, Larson, Dorociak, Jackson, Dart, CKSO, and Cook County)

112. Plaintiff incorporates herein all the prior allegations.

113. The Fourth Amendment requires police officers to possess sufficient probable cause before placing a criminal suspect under arrest, or at least reasonable suspicion of criminal activity to detain a suspect.

114. At all times relevant, Plaintiff had a clearly established right to liberty, including her right to personal safety and bodily integrity, as well as protection from unlawful seizure, unnecessary force, unreasonable force pursuant to the Fourth Amendment to the United States Constitution.

115. At all times relevant, as police officers acting under color of law, Defendant Officers were required to obey the laws of the United States.

116. Defendant Officers wantonly, intentionally, knowingly, maliciously, recklessly, objectively unreasonably, and/or with gross negligence and/or deliberate

indifference detained, handcuffed, and detained/arrested Plaintiff without a warrant or any lawful basis.

117.  Plaintiff was handcuffed and detained/arrested by Defendant Officers for filming the courthouse.

118.  After being handcuffed, Plaintiff was escorted inside the courthouse, was not free to leave and was therefore arrested and/or detained.

119.  Plaintiff's arrest was based on Defendant Officers' knowing, deliberate, and reckless disregard for the truth, wherein a supervising officer, Defendant Milazzo, made false statements regarding the law.

120.  Further, the Defendant Officers had no knowledge of any fact or circumstance which would lead a reasonable person to believe that Plaintiff committed any offense, whatsoever.

121.  Defendant Officers intentionally handcuffed and detained/arrested Plaintiff and/or had her detained/arrested with the intention of confining her within the fixed boundaries of the courthouse, and kept her confined in their custody for three (3) hours before releasing her without charging her with a crime and requiring her to return to court. Additionally, Defendants conduct in detaining/arresting and confining Plaintiff deprived her of her liberty without her consent, probable cause, legal justification, just cause, or any other legally valid reason.

122.  All the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

123. The acts complained of were carried out by the aforementioned individual Defendant Officers in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

124. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the Cook County Sherriff's Office, all under the supervision of ranking officers of said department.

125. Defendant Officers collectively and individually, while acting under the color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden under the Constitution of the United States.

126. Defendants Officers' actions constituted unlawful detention/arrests of Plaintiff.

127. As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiff was harmed and suffered damages for her mental, emotional injury and pain, mental anguish, humiliation, and embarrassment.

**COUNT IV**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(Fourth Amendment - Unlawful Seizure of Camera)**

***(Against Defendants Milazzo, Larson, Dorociak, Dart, CKSO, and Cook County)***

128. Plaintiff incorporates herein all the prior allegations.

129. The Fourth Amendment requires police officers to possess sufficient probable cause before seizing the property of a criminal suspect.

130. Defendant Officers wantonly, intentionally, knowingly, maliciously, recklessly, objectively unreasonably, and/or with gross negligence and/or deliberate indifference seized Plaintiff's camera without a warrant or any lawful basis.

131. At all times relevant, Plaintiff had a clearly established right to liberty, including unlawful seizure pursuant to the Fourth Amendment to the United States Constitution.

132. At all times relevant, as police officers acting under color of law, Defendant Officers were required to obey the laws of the United States.

133. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

134. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the Cook County Sherriff's Office, all under the supervision of ranking officers of said department.

135. Defendants collectively and individually, while acting under the color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden under the Constitution of the United States.

136. In violation of Plaintiff's clearly established constitutionally-protected right to be free from punishment and deprivation of life, liberty, and property without due process of law under the Fourth Amendments to the United States Constitution, Defendant Officers unlawfully seized Plaintiff's property.

137.  In violation of Plaintiff's clearly established constitutionally-protected right to be free form punishment and deprivation of life, liberty, and property without due process of law under the Fourth Amendments to the United States Constitution, Defendant Officers failed to act to prevent the seizure of Plaintiff's property.

138.  As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiff was harmed and suffered damages for her mental, emotional injury and pain, mental anguish, humiliation, and embarrassment.

### COUNT V
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Fourth Amendment - Unlawful Search of Camera)

### *(Against Defendant Milazzo, Dart, CKSO, and Cook County)*

139.  Plaintiff incorporates herein all the prior allegations.

140.  The Fourth Amendment requires police officers to possess sufficient probable cause before searching the property of a criminal suspect.

141.  Defendant Milazzo wantonly, intentionally, knowingly, maliciously, recklessly, objectively unreasonably, and/or with gross negligence and/or deliberate indifference searched Plaintiff's camera without a warrant or any lawful basis.

142.  Defendant Milazzo viewed footage on Plaintiff's camera in violation of the Plaintiff's Fourth Amendment rights.

143.  At all times relevant, Plaintiff had a clearly established right to liberty, including unlawful search pursuant to the Fourth Amendment to the United States Constitution.

144. At all times relevant, as a police officer acting under color of law, Defendant Milazzo was required to obey the laws of the United States.

145. The acts complained of were carried out by Defendant Milazzo in his capacity as a supervising police officer, with the entire actual and/or apparent authority attendant thereto.

146. The acts complained of were carried out by Defendant Milazzo in his capacity as a supervising police officer, pursuant to the customs, usages, practices, procedures, and the rules of the Cook County Sherriff's Office, all under the supervision of ranking officers of said department.

147. Defendant Milazzo, while acting under the color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden under the Constitution of the United States.

148. In violation of Plaintiff's clearly established constitutionally-protected right to be free unreasonable search and seizure without due process of law under the Fourth Amendments to the United States Constitution, Defendant Milazzo and Cook County unlawfully seized and searched Plaintiff's property.

149. As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiff was harmed and suffered damages for her mental, emotional injury and pain, mental anguish, humiliation, and embarrassment.

## COUNT VI
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Fourth Amendment - Unlawful Seizure of Camera Footage)

### *(Against Defendant Milazzo, Dart, CKSO, and Cook County)*

150.  Plaintiff incorporates herein all the prior allegations.

151.  The Fourth Amendment requires police officers to possess sufficient probable cause before seizing the property of a criminal suspect.

152.  Defendant Milazzo wantonly, intentionally, knowingly, maliciously, recklessly, objectively unreasonably, and/or with gross negligence and/or deliberate indifference seized through deletion Plaintiff's camera footage without a warrant or any lawful basis.

153.  At all times relevant, Plaintiff had a clearly established right to liberty, including unlawful seizure pursuant to the Fourth Amendment to the United States Constitution.

154.  At all times relevant, as a police officer acting under color of law, Defendant Milazzo was required to obey the laws of the United States.

155.  The acts complained of were carried out by Defendant Milazzo in his capacity as a supervising police officer, with the entire actual and/or apparent authority attendant thereto.

156.  The acts complained of were carried out by Defendant Milazzo in his capacity as a supervising police officer, pursuant to the customs, usages, practices, procedures, and the rules of the Cook County Sherriff's Office, all under the supervision of ranking officers of said department.

157.  Defendant Milazzo, while acting under the color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the

respective municipality/authority, which is forbidden under the Constitution of the United States.

158.  In violation of Plaintiff's clearly established constitutionally-protected right to be free from punishment and deprivation of life, liberty, and property without due process of law under the Fourth Amendments to the United States Constitution, Defendant Milazzo unlawfully seized Plaintiff's property.

159.  As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiff was harmed and suffered damages for her mental, emotional injury and pain, mental anguish, humiliation, and embarrassment.

<u>**COUNT VII**</u>
<u>**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**</u>
<u>**(Fourth Amendment - Unlawful Search of Purse)**</u>

***(Against Defendant Milazzo, Dart, CKSO, and Cook County)***

160.  Plaintiff incorporates herein all the prior allegations.

161.  The Fourth Amendment requires police officers to possess sufficient probable cause before searching the property of a criminal suspect.

162.  Defendant Milazzo wantonly, intentionally, knowingly, maliciously, recklessly, objectively unreasonably, and/or with gross negligence and/or deliberate indifference searched Plaintiff's purse without a warrant or any lawful basis.

163.  Defendant Milazzo emptied and viewed the contents of purse in violation of the Plaintiff's Fourth Amendment rights.

164.  At all times relevant, Plaintiff had a clearly established right to liberty, including unlawful search pursuant to the Fourth Amendment to the United States Constitution.

165.  At all times relevant, as a police officer acting under color of law, Defendant Milazzo was required to obey the laws of the United States.

166.  The acts complained of were carried out by Defendant Milazzo in his capacity as a supervising police officer, with the entire actual and/or apparent authority attendant thereto.

167.  The acts complained of were carried out by Defendant Milazzo in his capacity as a supervising police officer, pursuant to the customs, usages, practices, procedures, and the rules of the Cook County Sherriff's Office, all under the supervision of ranking officers of said department.

168.  Defendant Milazzo, while acting under the color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden under the Constitution of the United States.

169.  In violation of Plaintiff's clearly established constitutionally-protected right to be free unreasonable search without due process of law under the Fourth Amendments to the United States Constitution, Defendant Milazzo and Cook County unlawfully searched Plaintiff's purse.

170.  As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiff was harmed and suffered damages for her mental, emotional injury and pain, mental anguish, humiliation, and embarrassment.

## COUNT VIII
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## (Fourth Amendment – Abuse of Process)

### (Against Defendants Milazzo, Larson, Dorociak, Jackson, Dart, CKSO, and Cook County)

171.  Plaintiff incorporates herein all the prior allegations.

172.  The Fourth Amendment requires police officers and law enforcement officials to possess sufficient probable cause before initiating the criminal investigation process. An abuse of process claim requires an improper and willful act in the use of process and an ulterior motive.

173.  Defendant Officers and Defendant Cook County/CKSO abused the criminal investigatory process by using it to perpetrate an injustice, i.e. by arresting/detaining Plaintiff for filming a public building, bringing her in front of a judge in a full court room and requiring her subsequent return, ordering the seizure and destruction of her personal property, and finally, by threatening her with jail if she did not reveal her name and purpose for recording the courthouse.

174.  Defendants willfully and improperly detained/arrested and brought Plaintiff to court in retaliation because she engaged in protected conduct of filming the courthouse, a public building.

175.  Defendants had no legal justification to handcuff, detain/arrest, seize or search Plaintiff or her property.

176.  Defendants were motivated in the pursuit of criminal charges against Plaintiff, not by a belief that the charges had any factual or legal merit, or that

probable cause for their existence was present, but for improper, illegal, and unconstitutional purposes including, but not limited to:

    a.  Malice; and

    b.  Vexation; and

    c.  Retaliation.

177. Defendants' actions were done wantonly, intentionally, knowingly, maliciously, recklessly, objectively unreasonably, and/or with gross negligence and/or deliberate indifference.

178. As a result of Defendants' abuse of process violations to Plaintiff, she has suffered and continues to suffer damage including, but not limited to, embarrassment, mental anguish, emotional distress, and costs and attorney fees.

**COUNT IX**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(Municipal Liability-Policy to Detain/Arrest for Recording Public**
**Buildings)**

***(Against Dart, CKSO, and Cook County)***

179. Plaintiff incorporates herein all the prior allegations.

180. A municipality is liable under 42 U.S.C. § 1983 if the acts that violated a person's rights are attributable to its own policies, practices, and customs.

181. At all times relevant to this complaint, Defendant Cook County acted with deliberate indifference to Plaintiff's constitutional rights by maintaining policies, practices, and customs that condoned and fostered Defendant Milazzo's conduct.

182.  As articulated by Defendant Milazzo, a supervisory police officer at the Bridgeview Courthouse, Defendant Cook County maintained a policy or custom of a "judicial law" or "judicial order" to arrest/detain people for taking pictures of the outside of a public building.

183.  Defendant Milazzo accurately recited a county policy or custom to arrest and/or detain people for photographing outside of a courthouse immediately before he detained/arrested Plaintiff for recording the building.

184.  The policy described by Defendant Milazzo is unconstitutional on its face.

185.  This custom and policy that prohibits recording of the courthouse was the standard operating procedure for Defendant Milazzo, a supervising police officer and directly caused him to deprive Plaintiff of her constitutionally-protected rights as described herein.

186.  At Defendant Milazzos' direction and with his participation, Defendant's Larson and Dorociak handcuffed and detained/arrested Plaintiff for engaging in constitutionally protected conduct, and without probable cause or reasonable suspicion that she had engaged in any criminal activity.

187.  As a result of this policy and custom as reason to arrest for exercising protected conduct, Plaintiff was harmed and now seeks compensatory and punitive damages in addition to reasonable attorney fees.

## COUNT X
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Municipal Liability-Failure to Train and Supervise)

*(Against Dart, CKSO, and Cook County)*

188.  Plaintiff incorporates herein all the prior allegations.

189.  A municipality is liable under 42 U.S.C. § 1983 if the alleged violations are attributable to its own policies, practices, and customs.

190.  At all times relevant to this complaint, Defendant Cook County acted with deliberate indifference to Plaintiff's constitutional rights by maintaining policies, practices, and customs that condoned and fostered Defendant Milazzo's conduct.

191.  In the alternative and at all times relevant to this complaint, Defendant Cook County, did not in fact have such a policy in place, but failed to properly train Defendant Milazzo, a supervising police officer, thereby demonstrating deliberate indifference to Plaintiff's rights.

192.  Defendant Cook County failed to: (a) adequately supervise and train its officers and agents, specially Defendant Milazzo, a supervising officer, and including Defendant Larson, and Defendant Doraciak, thereby failing to adequately discourage further constitutional violations on the part of its officers; and (b) properly and adequately monitor and discipline its officers.

193.  Defendant Milazzo incorrectly told Plaintiff that there is a "judicial law" or "judicial order" that prohibited citizens from filming outside of a courthouse immediately before he detained/arrested Plaintiff for recording the building.

194.  As is being pled in this alternative, the fundamental lack of knowledge of such basic Constitutionally protected conduct by a supervisor such as Milazzo,

could only be the by-product of Cook County's failure to adequately train Milazzo before putting him the position in which he was placed by the defendant County.

195. Defendant Cook County failed to properly train its police officers on the proper standard for initiating an investigation of a criminal suspect, how to seize their property, and how to preserve their property unless and/or until an order to destroy such property is entered by a court of competent jurisdiction.

196. Defendant Cook County's failure to adequately supervise and train its police officers on the proper procedures for investigations and criminal investigations caused Defendant Officers to violate Plaintiff's Constitutional rights.

197. As a result of Defendant Cook County's failure to adequately train or correct an unlawful and untrue policy of citing "judicial law" as reason to detain/arrest people for exercising protected conduct, Plaintiff was harmed and seeks compensatory and punitive damages in addition to reasonable attorney fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Amanda Bergquist, demands judgment and prays for the following relief, jointly and severally, against all Defendants:

   a. Full and fair compensatory damages in an amount to be determined by a jury;

   b. Punitive damages in an amount to be determined by a jury;

   c. Reasonable attorney's fees and costs of this action; and

   d. Any such other relief as appears just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all triable issues, per Fed. R. Civ. P. 38(b).

Respectfully Submitted,

EXCOLO LAW PLLC

Dated: February 8, 2019

/s/ Solomon M. Radner
Solomon M. Radner
EXCOLO LAW, PLLC
Attorney for Plaintiff
26700 Lahser Road, Suite 401
Southfield, MI 48033
(248) 291-9712
sradner@excololaw.com

/s/ Jonathan D. Lubin
Johnathan D. Lubin (6297065)
Attorney for Plaintiff
8800 Bronx Ave., Suite 100-H
Skokie, IL 60077
(773) 954-2608
Jonathan@LubinLegal.com