UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMANDA JANE BERGQUIST, | |
| Plaintiff, | Case No. 18-cv-3619 |
| v. | |
| DONALD MILAZZO, *et al.* | Judge John Robert Blakey |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Amanda Bergquist sues Cook County, Cook County Sheriff Tom Dart, the Cook County Sheriff's Office, and four of its officers under 42 U.S.C. § 1983. She alleges that they violated her First and Fourth Amendment rights by detaining her for recording a video outside of a county courthouse. [34]. All Defendants move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). [62]. For the reasons explained below, this Court grants the motion in part and denies it in part.

I.  The Complaint's Allegations[1]

   A.  **Plaintiff Films Bridgeview Courthouse**

On March 28, 2018, Plaintiff entered the Bridgeview Courthouse in Bridgeview, Illinois to address a ticket. [34] ¶ 17. Upon discovering a handheld camera in Plaintiff's purse, courthouse security informed her that she could not

---

[1] This Court takes these facts from Plaintiff's second amended complaint [34].

1

proceed. *Id.* ¶ 18. Plaintiff exited the building and began filming its exterior. *Id.* ¶¶ 19–20.

Shortly thereafter, a deputy sheriff asked Plaintiff why she was filming. *Id.* ¶ 23. Plaintiff responded that she was doing it "because she wanted to." *Id.* ¶ 24. The deputy then called for his supervisor, Defendant Milazzo, who approached Plaintiff. *Id.* ¶ 26. The following conversation ensued:

> Milazzo: Ma'am do you know this is a public building?
> Plaintiff: Exactly. That's why I'm recording it.
> Milazzo: It's also a court facility . . .
> Plaintiff: Yep
> Milazzo: Which there is a judicial law or order that says you cannot tape this building.
> Plaintiff: Can I see that order?
> Milazzo: Yes, come on, we're going to check your IDs too.
> Plaintiff: Oh no. I'm not going in.
> Milazzo: Oh yeah, no no no. We're going to run you too.
> Plaintiff: No, that's alright.
> Milazzo: We're going to get your name, we're going to do a report, and everything, so come on in.
> Plaintiff: Um, no.
> Milazzo: Yeah, you're going to come in now.
> Plaintiff: I'm being detained?
> Milazzo: [Y]es.

*Id.*

### B. Deputies Handcuff Plaintiff And Place Her In Custody

After this exchange, Milazzo took Plaintiff's camera and instructed Defendants Deputy Sheriff Dorociak and Deputy Sheriff Sergeant Larson to handcuff her. *Id.* ¶ 33. They did so and led Plaintiff inside the courthouse. *Id.* These Defendants then repeatedly asked why she filmed the building and for a form of identification, but

Plaintiff refused to answer and voiced her objection to any search or seizure. *Id.* ¶¶ 41–43. She also requested to call her lawyer. *Id.* ¶ 45.

Plaintiff remained in custody for three hours while certain of the Defendants attempted to identify her; while in custody, Larson and Milazzo threatened Plaintiff with jail time. *Id.* ¶¶ 47, 48, 121. Larson asked Plaintiff if she wished to call a lawyer, and although Plaintiff responded affirmatively, neither Larson nor Milazzo gave her the opportunity. *Id.* ¶ 52. Milazzo also deleted the footage from Plaintiff's camera and eventually searched Plaintiff's purse, finding her ID card. *Id.* ¶¶ 49, 55.

While Defendants detained Plaintiff, Milazzo informed his supervisor, Defendant Deputy Chief Jackson, of the developing situation. *Id.* ¶ 58.

After finding Plaintiff's ID card, Milazzo and Larson brought her before Judge Peter Felice. *Id.* ¶ 59. Judge Felice ordered Plaintiff to turn over the camera's SD card and ordered her to return to court two days later. *Id.* ¶¶ 63, 65, 67–68. Plaintiff appeared as ordered and received back the SD card. *Id.* ¶¶ 71, 73. She later successfully recovered the deleted footage. *Id.* ¶ 74.

### C. Plaintiff's Claims

Plaintiff brings a ten-count complaint. Counts I and II assert that all of the Defendants engaged in First Amendment retaliation in violation of 42 U.S.C. § 1983 by handcuffing, detaining, and arresting Plaintiff for exercising her right to record a public building. [34] ¶¶ 93–111. Count III asserts that all Defendants violated the Fourth Amendment by detaining and arresting Plaintiff, and Count IV alleges that all Defendants but Jackson violated the Fourth Amendment by seizing her camera.

3

*Id.* ¶¶ 112–38. Counts V, VI, and VII allege that Defendants Milazzo, Dart, the Cook County Sheriff's Office, and Cook County violated the Fourth Amendment by searching her camera (Count V), seizing its footage (Count VI), and searching her purse (Count VII). *Id.* ¶¶ 139–70. Plaintiff alleges a constitutional abuse of process claim against all Defendants in Count VIII. *Id.* ¶¶ 171–78. Finally, Counts IX and X allege that Defendants Dart, the Cook County Sheriff's Office, and Cook County are municipally liable under § 1983 for maintaining a policy of arresting people for taking pictures of public buildings, or alternatively, for their failure to supervise and train police officers on the proper way to conduct investigations of a criminal suspect. *Id.* ¶¶ 179–97.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Iqbal*, 556 U.S. at 678. In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-

4

pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Id.* This Court does not, however, accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

### III. Analysis

Defendants move for dismissal on all counts of Plaintiff's second amended complaint. [62].

#### A. Count VIII: Abuse of Process

In Count VIII, Plaintiff asserts a Section 1983 "abuse of process" claim, alleging that Defendants abused the criminal investigatory process by arresting and detaining her, bringing her to court, ordering her property seized, and threatening her with jail time. [34] ¶ 173.

This claim fails at the outset because "abuse of process is not a free-standing constitutional tort if state law provides a remedy for abuse of process," and "Illinois provides such a remedy." *Adams v. Rotkvich*, 325 F. App'x 450, 453 (7th Cir. 2009). In other words, because Illinois law recognizes an "abuse of process" tort, constitutional abuse of process claims are not separately cognizable. *Id.* Accordingly, this Court dismisses Plaintiff's constitutional abuse of process" claim with prejudice. *See Glickman v. Vill. of Morton Grove*, No. 18 CV 4931, 2019 WL 1754091, at *4 n.5 (N.D. Ill. Apr. 19, 2019) (dismissing with prejudice federal abuse of process claim because Illinois law provides a remedy for abuse of process); *Flanigan v. Masterson*, No. 15 C 7715, 2016 WL 302129, at *2 (N.D. Ill. Jan. 25, 2016) (dismissing

5

constitutional abuse of process claim because Illinois law recognizes abuse of process tort claim).

## B. Counts I and II: First Amendment Retaliation Claims

In Counts I and II, Plaintiff alleges First Amendment claims for "unlawfully preventing recording of public building and retaliation" (Count I) and retaliation (Count II). [34] ¶¶ 93–111. Count I asserts that Defendants retaliated against Plaintiff by detaining or arresting Plaintiff for exercising her First Amendment rights to record a public building. *Id.* ¶¶ 93–102. And Count II asserts that Defendants retaliated against Plaintiff by refusing to release her after Plaintiff demanded an attorney, asserted her right to remain silent, refused to consent to searches and seizures, and refused to comply with Defendants' demands to identify herself. *Id.* ¶¶ 104–11.

To prevail on her First Amendment retaliation claims, Plaintiff must plead and prove three elements: (1) she engaged in activity protected by the First Amendment; (2) she suffered an adverse action that would likely deter future First Amendment activity; and (3) the First Amendment activity was "at least a motivating factor" in the Defendants' decision to retaliate. *Lavite v. Dunstan*, 932 F.3d 1020, 1031 (7th Cir. 2019); *Santana v. Cook Cty. Bd. of Review*, 679 F.3d 614, 622 (7th Cir. 2012).

Although Defendants move to dismiss Plaintiff's entire SAC, their briefs remain silent as to why specifically the First Amendment retaliation claims should be dismissed. [62] [75]. When this Court asked Defendants to address these counts at the motion hearing, Defendants argued that they lacked retaliatory motives. This

6

argument is misplaced at the motion to dismiss stage, however, because this Court must take as true Plaintiff's allegations that Defendants possessed retaliatory motives.

At the motion hearing, Defendants also argued that while the First Amendment provides rights to film generally, reasonable restrictions can curtail those protected rights. To be sure, while filming constitutes an activity protected by the First Amendment, *ACLU v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012), First Amendment rights are not absolute, *Braun v. Baldwin*, 346 F.3d 761, 763 (7th Cir. 2003). For instance, restrictions on First Amendment rights exist through statute, ordinance, regulation, or some other published restriction with a legitimate governmental purpose. *See id.*; *see also Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Indeed, reasonable filming restrictions remain common place rules for certain government buildings (including federal courthouses).

As such, Defendants contend that a general order applicable to the Bridgeview Courthouse constituted an example of such a reasonable restriction. *See* [62] at 5. That general order provides:

> Except as noted below, all mobile computing and telecommunication devices including, but not limited to, cellular telephones, smart phones, laptop and tablet computers, and other electronic devices capable of connecting to the Internet or making audio or video recordings are prohibited in the Circuit Court of Cook County, Illinois.

General Administrative Order No. 2013-01 (Circuit Ct. of Cook County). But the general order, by its plain terms, prohibits filming only *in* the courthouse. *Id.* Thus, it does not apply here, where Plaintiff alleges that she filmed only *outside* the

7

courthouse. *See* [34] ¶¶ 20–21. Without further explanation as to how that general order might apply here, or whether another statute, ordinance, or regulation might apply, the Defendants fail to identify a legal provision placing a reasonable restriction on Plaintiff's speech. Thus, at this early juncture in the proceedings, this Court rejects Defendants' argument that Plaintiff fails to allege a First Amendment claim arising from protected activity.

    **C.**    **Counts III–VII: Fourth Amendment Claims**

Counts III through VII alleges Fourth Amendment claims for: unlawful detention and arrest (Count III); unlawful seizure of Plaintiff's camera (Count IV); unlawful search of camera (Count V); unlawful seizure of camera footage (Count VI); and unlawful search of Plaintiff's purse (Count VII). [34] ¶¶ 112–70.

The Fourth Amendment protects the "right of the people to be secure in their persons . . . against unreasonable searches and seizures." *Lewis v. City of Chicago*, 914 F.3d 472, 476 (7th Cir. 2019) (quoting U.S. Const. amend. IV). A "seizure" occurs where a "reasonable person would have believed he was not free to leave." *Brendlin v. California*, 551 U.S. 249, 249 (2007); *Lewis*, 914 F.3d at 476. Yet the Fourth Amendment prohibits officials from detaining a person without probable cause. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 918 (2017); *Lewis*, 914 F.3d at 476. Thus, probable cause constitutes an absolute defense to unlawful detention claim. *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 713–14 (7th Cir. 2013); *Fleming v. Livingston Cty., Ill.*, 674 F.3d 874, 878 (7th Cir. 2012). Probable cause exists "if the totality of the facts and circumstances known to the officer at the time of the arrest would

8

warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *United States v. Sands*, 815 F.3d 1057, 1062 (7th Cir. 2015) (quoting *Abbott*, 705 F.3d at 714); *Gonzalez v. Vill. of W. Milwaukee*, 671 F.3d 649, 655 (7th Cir. 2012).

Defendants' sole argument regarding Plaintiff's Fourth Amendment claims distills to the notion that Milazzo and Larson possessed probable cause when they took Plaintiff into custody. *See* [62] at 4–11. Like the First Amendment retaliation claims, Defendants argue they possessed probable cause because Plaintiff violated the general order regarding filming. *E.g.*, [62] at 6. But as discussed above, the judicial order at issue concerns filming *inside* the courthouse, while Plaintiff alleges that she filmed *outside* the courthouse. [34] ¶¶ 20–22. Thus, taking Plaintiff's allegations as true, this Court cannot find as a matter of law—at this stage of the litigation—that any Defendant possessed probable cause to detain Plaintiff. Moreover, whether probable cause existed remains a "fact-intensive inquiry," that usually presents as "a question for the jury." *Jones by Jones v. Webb*, 45 F.3d 178, 181–82 (7th Cir. 1995). Therefore, given the alleged facts and the procedural posture of the case, this Court finds that Plaintiff plausibly states that Defendants lacked probable cause in detaining her.

And as to Plaintiff's unlawful search claims, where there exists a lawful custodial arrest, a "full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a reasonable search under that Amendment." *United States v. Thomas*, 512 F.3d 383, 387 (7th Cir. 2008); *see also*

9

*United States v. Jenkins*, 850 F.3d 912, 917 (7th Cir. 2017); *Leahy v. Simon*, No. 16 C 11070, 2019 WL 2103383, at *5 (N.D. Ill. May 14, 2019). Therefore, this Court also declines—at this stage—to dismiss Plaintiff's unlawful search claims.

**D.** *Monell* **Claims**

In Counts IX and X, Plaintiff brings claims against Cook County, Cook County Sheriff's Office, and Dart under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). [34] ¶¶ 179–97. Count IX alleges that Cook County and/or the Cook County Sheriff's Office maintain a policy of arresting people for taking pictures (or video recording) outside of a public building. [34] at ¶¶ 8, 183. Count X alleges, in the alternative, that no such policy was in place, but that Cook County and/or Cook County Sheriff's Office, failed to properly train Milazzo. *Id.* at ¶¶ 7, 191.

**1. Cook County**

As a threshold matter, Plaintiff seeks to hold Cook County liable under *Monell* based upon its purported policies, practices, and customs that led to her alleged constitutional deprivations in this case. But in Illinois, the Cook County Sheriff's Office bears the responsibility to appoint and hire deputies and act as custodian of the county courthouse. *Askew v. Sheriff of Cook Cty., Ill.*, 568 F.3d 632, 636 (7th Cir. 2009); *Ryan v. Cty. of DuPage*, 45 F.3d 1090, 1092 (7th Cir. 1995). As a result, no liability can attach to Cook County in this case under *Monell*; the county simply lacks the authority to establish and implement any policies regarding the training or performance by the employees of the Cook County Sheriff's Office. *Ryan*, 45 F.3d at

1092; *Conwell v. Cook Cty.*, No. 12 C 10062, 2015 WL 4973086, at *4 (N.D. Ill. Aug. 18, 2015); *Fairley v. Andrews*, 300 F. Supp. 2d 660, 670 (N.D. Ill. 2004).

In light of the foregoing, this Court dismisses all substantive claims against Cook County. But Cook County remains a necessary party to this for one reason: under Illinois law, it must indemnify the Cook County Sheriff's Office for any official capacity claims. *Carver v. Sheriff of LaSalle Cty., Illinois*, 324 F.3d 947, 948 (7th Cir. 2003); *Conwell*, 2015 WL 4973086, at *4; *Dandridge v. Cook Cty.*, No. 12-CV-5458, 2013 WL 3421834, at *10 (N.D. Ill. July 8, 2013). Because, as discussed below, Plaintiff sufficiently pleads a *Monell* claim against the Cook County Sheriff's Office at this stage of the case, County County remains in this suit solely as a necessary party for potential indemnification purposes.

### 2. Cook County Sheriff's Office

This Court turns now to Plaintiff's *Monell* claims against the Cook County Sheriff's Office and Sheriff Dart.

As a preliminary matter, Plaintiff attempts to sue Dart in both his official and individual capacities. Although, as discussed below, Plaintiff's individual capacity claim against Dart must be dismissed, her official capacity claim against Dart is really a claim against the Cook County Sheriff's Office itself. An "official capacity suit is another way of pleading an action against an entity of which the officer is an agent." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011); *Bertha v. Hain*, No. 18-3286, 2019 WL 4458390, at *3 (7th Cir. Sept. 18, 2019) ("The claims

11

against the Sheriffs in their official capacities are really against the Kane County Sheriff's Office.").

Generally, municipalities do not face Section 1983 liability unless a plaintiff can show that she suffered injuries of a constitutional magnitude as the result of an official custom, policy, or practice. *Monell*, 436 U.S. at 691. To survive a motion to dismiss, a plaintiff must plead factual content that allow a court to plausibly infer that she: (1) suffered a deprivation of a constitutional right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority; which (3) proximately caused her injury. *Ovadal v. City of Madison*, 416 F.3d 531, 535 (7th Cir. 2005); *see also White v. City of Chicago*, 829 F.3d 837, 843 (7th Cir. 2016).

Plaintiff sufficiently pleads her *Monell* claim against the Cook County Sheriff's Office based upon a widespread policy theory. As discussed above, the SAC plausibly alleges that Plaintiff suffered a constitutional deprivation when Defendants arrested her without probable cause and because she was exercising her First Amendment rights. *See generally* [34]. It further alleges that Defendant Milazzo claims the arrest occurred pursuant to a policy to detain with handcuffs individuals taking pictures in or around the courthouse if they refuse to identify themselves, and that both Defendant Milazzo and Defendant Larson claim this policy has been in place "since the 9/11 terror attacks." *Id.* ¶¶ 79, 91. Plaintiff also alleges that a chief deputy specifically told Defendant Milazzo of this policy. *Id.* ¶ 80. Taking these allegations

as true, this Court finds plausible that an express policy existed, leading to Plaintiff's detention. *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005).

Plaintiff alternatively alleges that Cook County "failed to properly train its police officers on the proper standard for initiating an investigation of a criminal suspect, how to seize their property, and how to preserve their property unless and/or until an order to destroy such property is entered by a court of competent jurisdiction." [34] ¶ 195. The Cook County Sheriff's Office's failure to train and supervise constitutes a policy or custom if it amounts to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). *Connick* provides two ways Plaintiff can establish deliberate indifference to her constitutional rights: (1) through a "pattern of similar constitutional violations by untrained employees;" or (2) by establishing that her unlawful detention was a "highly predictable consequence" of failing to train and supervise. 563 U.S. at 62–64.

Here, Plaintiff claims that the Cook County Sheriff's Office did not properly train or supervise its deputies, pointing specifically to Milazzo's incorrect statement that a "judicial order" prohibits citizens from filming outside a courthouse. [34] ¶ 193. Plaintiff also asserts that the Cook County Sheriff's Office failed to sufficiently train its deputies on the proper method for detaining and searching belongings. *Id.* ¶ 195. At this stage, this Court finds sufficient factual content to infer that Plaintiff's

13

alleged constitutional deprivations stemmed from the Sheriff's Office's failure to train and supervise its deputies.

For these reasons, this Court denies Defendants' motion to dismiss the *Monell* claims to the extent Plaintiff alleges those claims against: (1) Sheriff Dart, in his official capacity; and (2) the Cook County Sheriff's Office. This Court, however, dismisses Dart and the Cook County Sheriff's Office from Counts I through VII, as municipalities may not be liable under Section 1983 based upon respondeat superior or vicarious liability. *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007).

### E. Individual Capacity Claim Against Dart

Finally, to the extent Plaintiff sues Defendant Dart in his individual capacity, that claim fails based upon Plaintiff's failure to plead facts demonstrating Dart's awareness of the underlying conduct. *See generally* [34].

Individual liability under Section 1983 requires personal involvement in the alleged constitutional violation. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). Accordingly, an "individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *see also Colbert*, 851 F.3d at 657. Supervisors face liability under Section 1983 only if they "know about the [unconstitutional] conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Jones v. City of Chi.*, 856 F.2d 985, 992 (7th Cir. 1988)). Because the SAC

contains no allegations suggesting Dart knew about the conduct at issue, *see generally* [34], this Court dismisses Dart in his individual capacity.

## IV. Conclusion

For the reasons explained above, this Court grants in part and denies in part Defendants' motion to dismiss [62]. Count VIII is dismissed in its entirety with prejudice. Defendant Dart is dismissed to the extent Plaintiff alleges any claims against him in his individual capacity. In addition, all substantive claims against Defendant Cook County are dismissed, though that Defendant remains as a necessary party solely for indemnification purposes.

Dated: February 14, 2020

Entered:

_____
John Robert Blakey
United States District Judge